IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Danny L. Bowden,<br>    Petitioner, | )<br>)<br>) |
| v. | )   1:08cv1170 (LO/TRJ) |
| Commonwealth of Virginia,<br>    Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

Danny L. Bowden, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the Circuit Court for the County of Chesterfield, Virginia, for three counts of use of a communication system for solicitation of a person he knew or had reason to believe was under eighteen and three counts of attempted indecent liberties. Petitioner also submitted the requisite filing fee, pursuant to 28 U.S.C. § 1914(a). On June 18, 2009, respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and a Notice pursuant to Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Petitioner then filed a Reply to respondent's Motion to Dismiss on July 2, 2009. For the reasons that follow, the instant petition must be dismissed as time-barred, or in the alternative, as procedurally defaulted and barred from federal review.

I.

On June 6, 2005, petitioner was convicted in the Circuit Court for the County of Chesterfield for three counts of use of a communication system for solicitation of a person he knew or had reason to believe was under eighteen and three counts of attempted indecent liberties. Resp't Brief in Supp. 2. The trial court sentenced petitioner to one year in prison for each of his six convictions, for a total

of six years in prison. Resp't Brief in Supp. 2. Through his appointed counsel, petitioner filed a direct appeal in the Virginia Court of Appeals, which denied his petition for appeal on May 12, 2006.[1] Resp't Brief in Supp. 2. Through new appointed counsel, Gregory Sheldon, petitioner then appealed to the Supreme Court of Virginia, which refused his appeal on December 5, 2006. Resp't Brief in Supp. 2.

Following refusal of petitioner's appeal to the Supreme Court of Virginia, Sheldon agreed to assist petitioner pro bono in filing a state habeas petition. Resp't Brief in Supp. 17. However, petitioner did not receive the petition sent by Sheldon to him at his correctional institution prior to his state habeas corpus filing deadline. Resp't Brief in Supp. 17. Upon learning of this, Sheldon re-sent another copy of the petition, which petitioner received on January 15, 2008, although petitioner did not sign and execute his state habeas petition for submission to the Supreme Court of Virginia until June 23, 2008. Resp't Brief in Supp. 17. The Supreme Court of Virginia dismissed the petition as untimely on September 30, 2008, pursuant to Virginia Code § 8.01-654(A)(2), the state statute of limitations that requires a petition to be filed within one year from either final disposition of the direct appeal in state court or from when the time for filing such appeal has expired, whichever is later. Bowden v. Dir. Dep't of Corr., No. 081333 (Va. Sept. 30, 2008). Petitioner filed the instant petition on October 24, 2008.[2]

---

[1] The original order was entered on March 29, 2006, however, due to the death of petitioner's first appointed appellate counsel, the Court of Appeals of Virginia vacated the original order and entered a new order on May 12. Resp't Brief in Supp. 2.

[2] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In his petition, petitioner avers that he placed his petition in the prison mailing system on October 24, 2008. The Court received the petition on November 10, 2008.

By Order dated December 22, 2008, petitioner was informed that his federal habeas petition would be dismissed as time-barred unless he contested the application of the one-year statute of limitations or established that he was entitled to equitable tolling. After requesting and being granted an extension of time, petitioner submitted a Response on January 26, 2009, alleging that his attorney had deceived him, and that as a result, the instant petition was entitled to equitable tolling. By Order dated April 20, 2009, the petition was served on respondent. Respondent filed a Motion to Dismiss and Brief in Support on June 18, arguing that petitioner was not entitled to equitable tolling, that his claims were procedurally defaulted and barred from federal review, and that his claims also were without merit. Petitioner filed a Reply to respondent's Motion on July 2, 2009, responding only to specific paragraphs in respondent's Brief, but specifically asserting that he was entitled to equitable tolling because he had presented extraordinary circumstances.

## II.

As explained in the Court's December 22 Order, it appears that the applicable statute of limitations, 28 U.S.C. § 2244(d), bars the claims presented. A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). As noted above, petitioner's direct appeal concluded on December 5, 2006, when the Supreme Court of Virginia refused his appeal. Resp't Brief in Supp. 2. As a result, petitioner's state habeas corpus petition was due to be filed no later than December 5, 2007, and his conviction became final for federal purposes on March 5, 2007, the

3

last date he could have petitioned the Supreme Court of the United States for a writ of certiorari.[3]

In calculating the one-year federal limitations period, however, the Court must exclude the time during which "properly filed" state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Here, although petitioner filed a state petition for a writ of habeas corpus with the Supreme Court of Virginia on June 23, 2008, it was not "properly filed" because it was filed after the state limitations period had expired. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (explaining that the relevant laws and rules governing filings, for the purposes of determining whether a petition is properly filed, include time limits on the delivery of the petition). As a result, petitioner is not entitled to statutory tolling for any period of time. Thus, between March 5, 2007, the date petitioner's conviction became final for the purposes of federal review, and October 24, 2008, the date petitioner filed his federal petition, 599 days passed, making the instant petition untimely by 234 days. As a result, the petition is time-barred under § 2244(d), unless petitioner can establish that the statute of limitations does not apply or should otherwise be tolled. See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (requiring notice and the opportunity to respond before a sua sponte dismissal under § 2244(d)).

Petitioner was given the opportunity to respond to the Court's Order regarding the timeliness of the instant petition. In his response, petitioner argued that Gregory Sheldon, his appointed

---

[3] See U.S. Sup. Ct. R. 13(1) (petitions for review are timely filed within 90 days of the entry of judgment by a state court of last resort); see also Lawrence v. Florida, 549 U.S. 327, 333 (2007) (reaffirming the inclusion of time for seeking review by the Supreme Court in calculating when direct review of a state criminal conviction becomes final under § 2244(d)).

4

appellate counsel, was responsible for missing the filing deadline, "not because the petitioner's counsel made a mistake or error interpreting the statute of limitation [sic], but simply because petitioner's counsel just failed to do so." Resp. to Order 1. Petitioner also asserted that Sheldon "deceived petitioner and his mother into beleiving [sic] that petitioner's state habeas corpus was being prepared for filing; also petitioner's counsel informed petitioner in (4) separate letters, he, (counsel) would prepare and file petitioner's state habeas petition." Resp. to Order 1. However, petitioner asserts that Sheldon later contradicted these statements and instead claimed that he expressed only a commitment to draft the petition and mail it to petitioner, so that petitioner could file it pro se. Resp. to Order 2. In support of his claims, petitioner attached numerous letters from Sheldon regarding the status of petitioner's case and the state habeas petition counsel was drafting, an inmate grievance form relating to petitioner's incoming mail, an affidavit and letter from petitioner's mother regarding a conversation she had with Sheldon, and a letter from the Housing Unit Manager at the Greensville Correctional Center detailing petitioner's housing status from March to June 2008. Resp. to Order, Ex. 1-13; Letter to Court re: affidavit from Danny Bowman. Construing his response liberally, petitioner argues that he was entitled to equitable tolling as a result of Sheldon's actions.

On April 20, 2009, the petition was served on respondent, who filed a Motion to Dismiss, Rule 5 Answer, a Brief in Support of the Motion, and a Roseboro notice. Respondent argues that petitioner's claims are time-barred and that petitioner is not entitled to equitable tolling. Resp't Brief in Supp. 14. Respondent claims that not only did petitioner fail to present extraordinary circumstances, but even assuming he had, petitioner failed to act with due diligence. Resp't Brief in Supp. 17-18. Petitioner filed a Reply to Respondent's Brief in Support on July 2, 2009, stating

5

that counsel's "representation was unproductive, lacking, and probably a rush to persuade petitioner into providing financial support out of desperation . . . ." Reply to Resp't Brief in Supp. 4. Petitioner also states that he "diligently" pursued his rights "despite the obstacles." However, petitioner did not address the specific arguments made by respondent with regard to equitable tolling, nor did petitioner address respondent's argument that petitioner's claims were procedurally barred from federal review.

Despite his allegations, petitioner is not entitled to equitable tolling, therefore, the instant petition is time-barred and must be dismissed. In the Fourth Circuit, the one-year statute of limitations for § 2254 petitions is subject to equitable tolling. However, the court has cautioned that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Consequently, "any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. Accordingly, a petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

As noted, petitioner specifically claimed that Sheldon's inaction and deception resulted in petitioner's failure to file his petition in a timely fashion. In Rouse, 339 F.3d 238, using the existing three-part test for equitable tolling, the Fourth Circuit held that Rouse's counsel's failure to file on time was not subject to equitable tolling. Id. at 248. The court reaffirmed its established position that "a mistake by a party's counsel in interpreting a statute of limitations does not present the

extraordinary circumstances beyond a party's control" such that equitable tolling would be appropriate. Id. Moreover, the court explained that under the principles of agency, counsel's errors were attributable to Rouse, and therefore could not be considered "external" to Rouse's own conduct. Id. at 249. Nonetheless, in a footnote, the court addressed an unpublished case from the Eastern District of North Carolina cited by Rouse, in which the petitioner's counsel failed to take any action at all on his habeas petition. Id. at 250, n.14. The court noted that, assuming such "utter abandonment" could constitute extraordinary circumstances sufficient to warrant equitable tolling, those circumstances were not present in Rouse's case, because Rouse's counsel had committed only "ordinary legal error" by miscalculating the statute of limitations. Id.

Although the issue has not been conclusively determined by the Fourth Circuit, it is well-settled in other circuits that serious attorney misconduct does constitute extraordinary circumstances sufficient to permit equitable tolling. See, e.g., Fleming v. Evans, 481 F.3d 1249 (10th Cir. 2007) (holding that "sufficiently egregious misconduct on the part of habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period"); United States v. Martin, 408 F.3d 1089 (8th Cir. 2005) (permitting equitable tolling due to counsel's deception of petitioner regarding the law pertaining to and the filing status of his § 2255 petition); Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004) (acknowledging that in "narrow circumstances" the "misbehavior" of an attorney may warrant equitable tolling); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (determining that sufficiently egregious attorney misconduct can warrant equitable tolling of the statute of limitations); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (permitting equitable tolling for attorney deception, where attorney repeatedly told petitioner he had filed § 2255 petition when he had not); Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003) (finding that although attorney error

7

normally does not constitute extraordinary circumstances necessary to toll the AEDPA statute of limitations, when an attorney's behavior is outrageous or seriously incompetent it can be extraordinary). But see Modrowski v. Mote, 322 F.3d 965 (7th Cir. 2003) (finding that petitioners are always responsible for the actions of counsel, whether they are negligent, grossly negligent, or willful).

Even assuming the Fourth Circuit would permit egregious attorney misconduct or the "utter abandonment" discussed in Rouse to toll the statute of limitations, such situations are not present here. Petitioner's primary argument appears to be that Sheldon expressed his willingness to file the state habeas petition for petitioner, but instead mailed the petition to petitioner to be filed pro se. Resp. to Order 1. Petitioner also appears to claim that Sheldon did nothing during the year-long period between the conclusion of his state appeal and the state habeas filing deadline. Resp. to Order 3. Finally, petitioner seems to claim that Sheldon never actually sent the petition to him. See Resp. to Order 3 (noting that the "missing state habeas corpus petition that petitioner's counsel 'supposely' [sic] had mailed on November 15, 2007" was not received by him at his correctional institution); see also Pet., Aff. of Explanation 4 (alleging that petitioner received all of Sheldon's letters except the letter with the habeas corpus petition, and that petitioner does not believe the habeas was ever sent to him by Sheldon).

Despite his claims, the attachments provided by petitioner, as well as the affidavit from Sheldon regarding petitioner's state habeas corpus petition, demonstrate that Sheldon did not abandon petitioner, nor did his conduct rise to the level of being egregious, incompetent, or deceptive. The letters submitted by petitioner span the length of time between the conclusion of petitioner's direct appeal and shortly after petitioner's receipt of a copy of the state habeas petition

8

drafted by Sheldon in the early part of 2008. As petitioner asserts, Sheldon did indicate in a letter dated December 4, 2006, that he would "be happy to represent" petitioner with respect to filing a state habeas petition following the conclusion of his direct appeal. See Resp. to Order, Ex. 5. However, petitioner provides no documentation to demonstrate that Sheldon actually undertook to represent petitioner in any official capacity. Rather, in all letters subsequent to the December 4, 2006 letter, Sheldon clearly and repeatedly indicates that he was assisting petitioner in drafting the petition, and never does Sheldon expressly assume obligation for filing the petition. For example, in a letter dated January 3, 2007, Sheldon states that "it is my advice that you [petitioner] file a petition for a writ of habeas corpus," and that Sheldon would be "happy to assist you with this process." Resp. to Order, Ex.6. Similarly, in a letter dated August 8, 2007, Sheldon writes that he had "not been appointed to represent [petitioner] on a petition for a writ of habeas corpus," that his "official representation ended when [petitioner's] petition for appeal was denied by the Virginia Supreme Court," and that he was continuing "to assist [petitioner] because" he believed that petitioner's case deserved his attention. Resp. to Order, Ex.2.

Sheldon also expressly informed petitioner that he would work on the matter until petitioner advised him otherwise, and asked petitioner to advise him on how he wished Sheldon to proceed. See Resp. to Order, Ex.2. There is no indication that petitioner ever once informed Sheldon that he wanted Sheldon to discontinue work on the petition, or that petitioner sought to proceed on his own in drafting the petition. Furthermore, although petitioner asserts here that his state habeas corpus petition was "at the mercy" of Sheldon because petitioner did not have a copy of the documents from his trial court case file, petitioner himself attaches a letter from Sheldon in which Sheldon explained that he was not in possession of any of the specific documents that petitioner sought, that he was not

9

able to obtain those items from petitioner's former counsel, and that petitioner's former counsel's heirs or assigns now would have those items. See Resp. to Order, Ex.1. Therefore, there is nothing to suggest petitioner was "at the mercy" of Sheldon such that he could not have opted to draft and file his own petition if he chose to do so. Based on petitioner's own assertions and attachments, Sheldon had exactly the same information that petitioner had regarding his trial and his appeal, and was providing assistance to petitioner by drafting a state habeas corpus petition for him, but was not acting as petitioner's legal representative.

Additionally, it is clear from the pleadings and attachments submitted by both petitioner and respondent that Sheldon's actions rise to a level of negligence, at worst. Sheldon states in an affidavit that he mailed the state petition and an application to proceed in forma pauperis to petitioner on November 15, 2007, postage pre-paid, approximately three weeks before petitioner's state habeas petition was due, and included detailed instructions on how to have the documents notarized and mailed to the Chesterfield Circuit Court for filing. See Resp't Brief in Supp., Ex. D, Aff. of Gregory Sheldon. Aside from petitioner's bare allegations, there is nothing to support his assertion that Sheldon did not mail the petition. Additionally, although petitioner may argue that Sheldon should have sent the petition via certified mail rather than postage pre-paid, such an action does not rise to the level of egregious attorney misconduct, and instead reflects no more than negligence by Sheldon. As well, although petitioner asserts that Sheldon did "nothing" on his state habeas petition during the year in which it could be timely filed, he again provides no facts to support such a claim. Petitioner does not indicate that the petition itself was defective or inappropriate for filing with the state court. Although petitioner may not have been entirely satisfied with the results of Sheldon's efforts, there is nothing to suggest that Sheldon's work was utterly incompetent. As

a result, petitioner's allegations are insufficient to demonstrate the existence of extraordinary circumstances necessary to permit equitable tolling.

Finally, even assuming Sheldon's actions warranted equitable tolling, petitioner would not be entitled to such tolling because he has failed to demonstrate that he acted diligently. A petitioner's lack of diligence in pursuing his federal remedy generally acts to negate the application of equitable tolling. See Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001) (finding that petitioner's "strategic" decision to delay filing of his state habeas petition would not permit equitable tolling); see also Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

To demonstrate that he acted diligently, petitioner states that he wrote several letters to Sheldon seeking assistance, which he did not receive until February 4, 2008; that he attempted to gain access to the law library on February 19, 2008 to prepare his own habeas corpus petition, though he was unsuccessful; and that before he could gain access to the library again, he was placed in segregation without access to the library beginning on March 10, 2008, and had legal papers missing once he was released from segregation that were not returned until June 3, 2008. See Resp. to Order, Attached Letter; Resp. to Order; Letter to the Court re Aff. from Danny Bowman. Petitioner also states that he was diligent in light of the circumstances regarding his access to various trial court documents. Resp. to Order 2. According to petitioner, his original trial counsel, who died during the pendency of petitioner's appeal to the Court of Appeals of Virginia, had petitioner's trial court case file. As a result, petitioner alleges that in order to compile his federal habeas petition, he was required to use "bits of information that he extracted from letters sent to petitioner from his counsel,

11

and copies of appeal petition to the Virginia Court of Appeals and Virginia Supreme Court." Resp. to Order 2.

Despite his contentions, the record does not demonstrate that petitioner acted diligently. First, there is no indication that petitioner ever contacted Sheldon as his one-year deadline drew close to determine the status of the petition or when the petition would be filed or mailed. As well, nothing in the record suggests that petitioner indicated to Sheldon that he wished to draft or file his own petition, or that petitioner expressed any dissatisfaction with Sheldon's handling of his state habeas petition. Furthermore, and most importantly, even after petitioner received a copy of the petition drafted by Sheldon on January 15, 2008, which was approximately two months prior to his federal filing deadline of March 4, 2008, petitioner waited until June 23, 2008 to file his state habeas petition. See Resp't Brief in Supp., Ex. D, Aff. of Gregory Sheldon; Resp't Brief in Supp. 17; Resp. to Order, Attached Letter. Petitioner chose to re-draft his own, rather than to file the petition sent to him by Sheldon, yet he does not indicate why or how the petition sent by Sheldon was not acceptable for filing, what information he required from the law library, why he was in any way delayed because of his lack of access to his trial documents, or how taking the additional time assisted in his preparation of the state habeas petition. See Resp't Brief in Supp. 17; Resp. to Order, Attached Letter. In fact, petitioner was able to file a state bar complaint against Sheldon before he was placed in segregation, yet chose not to file his state habeas petition during that same period. See Resp. to Order, Attached Letter' Resp't Brief in Supp. 18. As a result, not only has petitioner failed to demonstrate that he is entitled to equitable tolling, but even assuming he was, petitioner's own lack of diligence would preclude such relief. See Spencer, 239 F.3d at 630. Therefore, the instant petition is time-barred, and respondent's Motion to Dismiss will be granted.

12

## IV.

Lastly, even if the instant federal petition had been filed timely, petitioner's claims still would be barred from federal review as a result of the Supreme Court of Virginia's finding of procedural default. A state court's finding of procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met, Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. Id. Second, the state procedural rule furnished to default petitioner's claim must be an independent and adequate state ground for denying relief. Id. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. Here, the Supreme Court of Virginia dismissed petitioner's claims as defaulted pursuant to Virginia Code § 8.01-654(A)(2) (statute of limitations provision for state petitions for habeas corpus). Id. The statute of limitations provision constitutes an adequate and independent state law ground for decision. See, e.g., Sparrow v. Dir. Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). As a result, even if timely filed, petitioner's claims would be procedurally defaulted.

Although respondent raised the procedural default issue in his Brief in Support of the Motion to Dismiss, and petitioner was provided the opportunity to respond, petitioner failed to show cause why his claims should not be dismissed as procedurally defaulted. See Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999) (finding a federal habeas court's sua sponte dismissal of procedurally defaulted claims permissible where petitioner is provided notice and an opportunity to argue against dismissal). The existence of cause ordinarily turns upon a showing of (1) a denial of effective

assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996). Here, petitioner failed to address the procedural default issue in his Reply to Respondent's Brief in Support, instead choosing only to address selected paragraphs of respondent's brief and the issue of equitable tolling. Because petitioner has presented nothing to demonstrate cause and prejudice, or that a fundamental miscarriage of justice would occur absent review, the claims in the instant petition are procedurally defaulted and barred from federal review, and the instant petition will be dismissed.

IV.

For the above-mentioned reasons, respondent's Motion to Dismiss will be granted, and the instant petition will be dismissed with prejudice as time-barred, or in the alternative, as procedurally defaulted. An appropriate Order shall issue.

Entered this 13th day of August 2009.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge